UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FRANDO,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>BILL GORE, et al.,<br><br>　　　　　　　　　　Respondents. | Case No.: 21-cv-01434-JLS-KSC<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR HABEAS CORPUS**<br><br>**[Doc. No. 1]** |

　　　On August 11, 2021, petitioner Daniel Frando ("Frando" or "petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in the San Diego Superior Court for transportation of a controlled substance, cocaine, for sale (the "Petition" or "Pet."). Doc. No. 1. The Petition raises four grounds for relief: (1) that the Border Patrol's detention of petitioner was not based on "particularized facts" as is necessary for reasonable suspicion under the Fourth Amendment, and as such the trial court's denial of petitioner's motion to suppress evidence gathered during this stop was error; (2) that there was insufficient evidence to support petitioner's conviction; (3) that the trial court's erroneous admission of expert evidence deprived petitioner of a fair trial in violation of his right to Due Process; and (4) that petitioner was deprived of his constitutional right to a fair trial due to prosecutorial

misconduct. Pet. at 6-9.[1] Respondents answered the petition (the "Answer"). Doc. No. 13. Petitioner has not filed a traverse.

The Court has reviewed the Petition, respondents' Answer and supporting Memorandum of Points and Authorities, and the Lodgments submitted by respondents, including the state court record, and hereby submits this Report and Recommendation to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2. The Court has considered the arguments of the parties, the applicable law, and the record before it, and, for the reasons stated below, **RECOMMENDS** that the District Court **DENY** the Petition.

## I. FACTUAL BACKGROUND

In reviewing a federal petition for writ of habeas corpus, federal courts defer to state court findings of fact and presume them to be correct. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The California Court of Appeal's unpublished decision denying petitioner's direct appeal in Case No. D075481 sets forth the following summary of the facts:

> Border Patrol Agent Oliver O. has patrolled the San Clemente station and immigration checkpoint for over seven years. His duties include inspecting that stretch of the I-5 freeway for behavior suggesting individuals are violating United States immigration laws or engaging in criminal activity. That stretch of freeway is known as a high-narcotics trafficking area, as it connects Mexico to the interior of the United States. While on roving patrol, Agent O. and his partner were in a marked border patrol vehicle parked just north of the checkpoint. His attention was drawn to Frando's vehicle because of the "nervous" behavior Frando displayed when he noticed the agents' marked vehicle. After he noticed the agents, Frando immediately placed his hands on the "ten and two" position of the steering wheel, with his arms "fully extended" and "stiffened." Frando's behavior was noteworthy because, in the officer's experience, it was similar to behavior he had witnessed in connection with previous narcotics arrests and drug seizures. The agents pulled their

---

[1] All page references are to the page numbers generated by the CM/ECF system.

marked vehicle onto the freeway to further observe Frando. Frando slowed his speed, and as soon as the agents pulled behind him, he changed lanes in a manner the agent perceived to be unsafe, squeezing himself between two cars where there was very little room and forcing the vehicle behind him to brake. The agents moved behind Frando, who repeatedly checked his mirrors to observe the border patrol vehicle, causing his vehicle to drift between lanes. The agents conducted a vehicle records check which indicated the vehicle had not crossed the border that day and had not previously been stopped on suspicion of smuggling. Frando began to "shake" and "bob" his head and tap his fingers, while his hands remained at the "ten and two" position. The agent described this behavior as "noteworthy" because he had seen other detainees and suspects behaving similarly. Based on Frando's behavior, the agents decided to pull him over (about five miles north of the checkpoint).

Frando presented a California identification card and told the agents he was traveling from San Diego to Los Angeles to "show a friend a house," but he was unable to tell the agents where the house was or his friend's name. Frando consented to a search of his vehicle. The agents discovered two suitcases in the vehicle's trunk; inside the bags were 33 individually wrapped bundles containing a total net weight of approximately 33 kilograms of cocaine. Frando was arrested under suspicion of transporting cocaine for sale.

A detective on the border crime suppression team within the narcotics and gang division of the San Diego County Sheriff's Department interviewed Frando. Frando told the detective he was separated from his wife and living in his car. After being advised of his rights, Frando told the detective he had never driven drugs before. Frando said he had agreed to drive a woman to Los Angeles for his acquaintance Alex, who promised to give him $800 for the job. When the agent laughed—apparently expressing skepticism at the idea of getting paid $800 for driving someone—Frando acknowledged he "knew it wasn't, like, legit." Frando further stated, "I had no idea, I mean I knew there was something bad about those damn bags. Stupid, stupid, stupid." He then explained the events that unfolded. When he arrived to pick the woman up, he was directed to back into the garage. A woman was there with her child, and there was also a man with tattoos. They closed the garage door, loaded two bags into his trunk, and directed that one bag should be delivered to "address A," while the other bag should be delivered to "address C." They told him he would not get the actual address until after he passed the border patrol checkpoint. Frando said the woman was supposed to go with him and he did not know why that changed. After the detective told Frando he was transporting "almost a million dollars of drugs," Frando offered to cooperate with law enforcement by continuing the delivery so the agents could discover

the destination location, stating, "I had no idea that that's what it is. I mean I thought it would just be, you know, I kind of knew, but I had no idea it was ... shit." The detective advised Frando that cooperating in that manner was "too dangerous."

The detective testified as an expert at trial, opining that the street value of 33 kilograms of cocaine ranged from $1.3 to $2.6 million. Based on his training and experience, he did not think a first-time drug courier would be given such an extensive amount of cocaine. To prevent the possibility of theft, a drug trafficking organization would typically vet an employee by providing the employee with smaller amounts of drugs or different tasks until the employee demonstrated his trustworthiness and reliability.

Frando testified in his own defense at trial. He acknowledged he thought it was "strange" to be paid $800 to drive a woman to Los Angeles but claimed he "wasn't under the impression that [he] was doing anything illegal." Alex was a friend of Frando's good friend Joel, and Alex had contacted Frando attempting to reach Joel. Because Joel was out of the country, Alex asked if Frando would drive a woman to Los Angeles. Frando agreed. When he arrived at a townhouse to pick the woman up, he was directed to back into the garage. He saw a little girl inside, and a woman and a man were there. They closed the garage and loaded a pair of bags into the trunk. He was told there was a change of plans, and he should call to receive the addresses to deliver the bags after he passed the border patrol checkpoint. He admitted he felt "uncomfortable," but felt perhaps a family needed his help to bring the bags to Los Angeles.

Frando claimed he told the agents he was going to Los Angeles to show a house because he had a restricted driver's license allowing him to drive only between home and work. He feared losing his car or his license for driving in violation of the restriction. After the agents searched his trunk, they told him he was being arrested for drug trafficking. He stated that he "should have known there was something wrong" with the job he was being asked to do but insisted he did not know there were 30 kilograms of cocaine in his car. However, on cross-examination, he admitted part of the reason he suspected "something was wrong" was because he knew that "Alex runs drugs to Joel," and Joel had told him he "engage[d] in these unsavory jobs, these driving jobs for Alex."

Doc. No. 14-12 at 2-6. The Court notes that petitioner does not challenge the findings of fact in the underlying proceedings.

## II. PROCEDURAL HISTORY

On November 6, 2018, the jury found petitioner guilty of the crime of transportation of a controlled substance, cocaine, for sale.[2] Doc. No. 14-6 at 4-5. The jury also found two enhancing allegations true: that the weight of the controlled substance was 57 grams or more of a substance containing cocaine,[3] and that the substance containing cocaine exceeded 20 kilograms by weight.[4] *Id.* at 5. On January 28, 2019, the trial court sentenced petitioner to eight years in custody and ten years' supervised probation, for a total sentence of 18 years. Doc. No. 14-7 at 15.

Petitioner filed a Notice of Appeal on March 4, 2019. Doc. No. 14-8 at 11. In his opening brief on appeal, filed August 11, 2019, petitioner challenged his conviction on four grounds: (1) his detention by the Border Patrol agents was not based on a reasonable suspicion and therefore violated the Fourth Amendment; (2) there was insufficient evidence to support the conviction; (3) the trial court erroneously admitted Detective Bedingfield's opinion testimony; and (4) the prosecutor's misconduct deprived him of a fair trial. *See generally id.* at 19-63. The California Court of Appeal denied petitioner's appeal on May 27, 2020. *See generally* Doc. No. 14-12.

Petitioner sought review from the California Supreme Court on July 4, 2020. *See generally* Doc. No. 14-13. The California Supreme Court summarily denied the petition for review on August 12, 2020. Doc. No. 14-14.

Petitioner sought relief in this Court by Petition dated August 11, 2021. *See generally* Doc. No. 1. In support of his Petition for issuance of a writ of habeas corpus, petitioner raises the same arguments he raised before the state Court of Appeal and Supreme Court.

///

---

[2] Cal. Health & Safety Code § 11352(a).

[3] Cal. Penal Code § 1203.073(b)(1) (repealed effective January 1, 2022).

[4] Cal. Health & Safety Code § 11370.4(a)(4).

## III. STANDARD OF REVIEW

Federal habeas corpus relief is available only to those who are in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The Supreme Court has repeatedly emphasized that because "it is not the province of a federal habeas court to reexamine state-court determinations on state law questions," a writ of habeas corpus may not issue "for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (collecting cases). To determine whether petitioner is entitled to habeas corpus relief, the Court reviews the Petition according to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.[5] 28 U.S.C. § 2254(d)(1)&(2); *see also Early v. Packer*, 537 U.S. 3, 11 (2002).

This standard is highly deferential and "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 100 (2011). The Court must determine whether the state court's application of Supreme Court precedent was "objectively unreasonable, not merely wrong; even 'clear error' will not suffice." *See Robertson*, 849 F.3d at 1182. In other words, the "question" on habeas review "'is not whether a federal court believes the state court's determination … was incorrect but whether that determination was unreasonable – a substantially higher

---

[5] "Clearly established federal law is limited to 'the holdings, as opposed to the dicta, of the [Supreme] Court's decisions' [citation], and '[c]ircuit precedent cannot refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced.'" *Robertson v. Pinchon*, 849 F.3d 1173, 1182 (9th Cir. 2017) (citations omitted) (alterations in the original). Therefore, a lack of controlling Supreme Court precedent can preclude habeas corpus relief. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (holding federal habeas relief cannot be granted simply because a reviewing court concludes the state court decision is erroneous or incorrect based on its own independent judgment). Habeas relief is available under § 2254(d)(1) only when "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with Supreme Court precedents." *Harrington*, 562 U.S. at 101. These requirements "reflect a 'presumption that state courts know and follow the law,'" and a corresponding "'demand[] that state-court decisions be given the benefit of the doubt.'" *Robertson*, 849 F.3d at 1182-83 (citations omitted).

The Court is "limited" in its review "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Furthermore, the Court "employs a 'look through' presumption," meaning that it presumes the "last reasoned opinion" provides the reason for a higher court's summary denial of a claim. *See Wilson v. Sellers*, __ U.S. __, 138 S.Ct. 1188, 1194 (2018) (citations omitted). Because the California Supreme Court denied the petitioner's appeal without comment, *see* Doc. No. 14-14, this Court will "look through" to the California Court of Appeal's decision when evaluating the state court's reasoning and application of federal law.

## IV. DISCUSSION

As noted, petitioner asserts four separate grounds for habeas relief: (1) the Border Patrol's stop violated the Fourth Amendment, and that the subsequent search of his vehicle was therefore also unconstitutional, and all evidence gathered during the stop should have been excluded at trial; (2) there was insufficient evidence to support petitioner's conviction; (3) the trial court's erroneous admission of expert evidence deprived petitioner of a fair trial; and (4) petitioner was deprived of his constitutional right to a fair trial due to prosecutorial misconduct. *See* Pet. at 6-9. Petitioner seeks to have his conviction "reversed." *Id.* at 6. The Court addresses each of petitioner's arguments in support of the issuance of a writ of habeas corpus below.

///

### A. Ground One: Unreasonable Stop and Search

As a first ground for habeas corpus relief, petitioner asserts that the Border Patrol agents' decision to detain him based on a "hunch" was not lawful, because the Fourth Amendment requires "reasonable suspicion" based on "particularized facts" to justify a such a stop. Pet. at 6. Petitioner further asserts that because the initial traffic stop violated the Fourth Amendment, the subsequent search of his vehicle was also unlawful, and all evidence from that search should have been suppressed at trial. *Id.*

Respondents counter that petitioner's Fourth Amendment claims are not cognizable on federal habeas review, because petitioner had a fair opportunity to litigate the claim in state court. Doc. No. 13-1 at 13. Respondents note that petitioner moved to suppress the evidence at trial and argued both to the Court of Appeal and the California Supreme Court that the trial court's denial of his motion was in error. *Id.* at 14. Respondents further argue that even if the Court were to consider this claim, the trial court's determination that the Border Patrol's detention did not violate the Fourth Amendment was not erroneous because "[t]he border patrol agent properly cited specific, articulable facts which demonstrate a reasonable suspicion that [petitioner] was engaged in illegal activity." *Id.* at 15.

Federal habeas corpus relief is not available "on the ground that evidence obtained in an unconstitutional search or seizure was introduced at [a petitioner's] trial" where the petitioner had "an opportunity for full and fair litigation of a Fourth Amendment claim" in the state proceedings. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Furthermore, the Ninth Circuit has determined that California's statutory provisions allowing a criminal defendant to move for the suppression of evidence obtained through unreasonable search and seizure provides the required "full and fair" opportunity to litigate a Fourth Amendment claim. *See Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (finding habeas petitioner had the "opportunity" to litigate his claim because "[u]nder California law, a defendant can move to suppress evidence on the basis that it was obtained in violation of the [F]ourth [A]mendment"). The Court observes that petitioner moved in the trial court to suppress the evidence gathered during the Border Patrol's stop, and challenged the denial of that motion

in his appeals both the Court of Appeal and the California Supreme Court. *See* Doc. No. 14-8 at 19-31; Doc. No. 14-13 at 8-10. Petitioner has not raised grounds for review by this Court beyond the trial court's decision on his motion to suppress evidence. *See* Pet. at 6 ("The trial court's denial of the motion to suppress evidence was in error."). Therefore, the Court finds petitioner had a full and fair opportunity to litigate his Fourth-Amendment claim, and therefore that this claim is not cognizable on federal habeas review.

Moreover, even if the Court were to reach the merits of petitioner's allegation that the Border Patrol agents' stop and subsequent search violated the Fourth Amendment, the Court finds petitioner would not be entitled to relief. Petitioner does not address the standard of federal habeas review and does not identify any federal precedent inconsistent with the Court of Appeal's decision. The Supreme Court has recently reiterated that its "precedents … permit[] an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, __ U.S. __, 140 S.Ct. 1183, 1187 (2020) (citations omitted). The Supreme Court also explained that "the level of suspicion" required under these precedents "'is obviously less than is necessary for probable cause.'" *Id.* (citation omitted). Under Supreme Court jurisprudence, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000), and law enforcement officers are "entitled" to draw on their "specialized training" and experience. *U.S. v. Arvizu*, 534 U.S. 266, 276 (2002), *overruled in part on other grounds by Davis v. Washington*, 547 U.S. 813 (2006). In light of these precedents, the Court cannot find that the denial of petitioner's motion to suppress, and the subsequent affirmance of that decision by the Court of Appeal, are contrary to federal law.

For the foregoing reasons, the Court recommends the petition be **DENIED** as to the first ground for relief.

### B. Ground Two: Insufficient Evidence to Support Conviction

As a second ground for habeas corpus relief, petitioner asserts that there was insufficient evidence to support his conviction, because he denied that he knew there were

drugs in the suitcases he transported. Pet. at 7. Petitioner states that although he suspected that the task of transporting the suitcases across the border "might not be 'legit,'" he nevertheless did not know what was inside the suitcases, and the only evidence of his knowledge adduced at trial was "speculative." *Id.*

Respondents state that petitioner bears the heavy burden of demonstrating that "no 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Doc. No. 13-1 at 16 (citing *Jackson v. Virginia*, 443 U.S. 307, 317 (1979)). Respondents argue that petitioner cannot meet that burden here, because circumstantial evidence supported the reasonable inference that petitioner "knew he was transporting illegal contraband." *Id.* at 18-19. Respondents further contend that the Court of Appeal did not unreasonably apply *Jackson* or any other Supreme Court precedent in finding there was sufficient evidence to support petitioner's conviction. *Id.*

"*Jackson* claims face a high bar in federal habeas corpus proceedings because they face two layers of judicial deference." *See Coleman v. Johnson*, 556 U.S. 650, 651 (2012). First, when there has been a conviction, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson,* 443 U.S. at 319; *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010). The court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *See Jackson,* 443 U.S. at 326. Second, the court must determine whether the state court decision was objectively unreasonable when applying *Jackson. See Coleman*, 556 U.S. at 651.

Regarding the first layer, "[i]nsufficient evidence claims are reviewed by looking at the elements of the offense under state law." *See Emery v. Clark*, 643 F.3d 1210, 1214 (2011). In California, it is unlawful for an individual to transport, offer to transport, or import any controlled substance, such as cocaine, into the state. *See* Cal. Health & Saf. Code §1152(a). The prosecution must prove: "(1) the defendant transported for sale a controlled substance; (2) the defendant knew of its presence; (3) the defendant knew of the

substance's nature or character as a controlled substance; (4) the controlled substance transported was transported for sale; (5) the transported substance was cocaine; and (6) the controlled substance was in a usable amount." *See* Cal. Crim. No. 2300; *see also People v. Meza*, 38 Cal. App. 4th 1741, 1746 (1995). Every element must be proved beyond a reasonable doubt. *See Jackson*, 443 U.S. at 315.

Petitioner argues that elements two and three were not proved by the prosecution because although he testified that he agreed to transport the suitcases, he did not know what was in the suitcases. Pet. at 7. However, although petitioner testified to that effect, the jury was entitled to believe or disbelieve petitioner's testimony. *See Jackson*, 443 U.S. at 326. It is not this Court's function to assess petitioner's credibility or to opine as to how the jury should have weighed his testimony. *See United States v. Nevils,* 598 F.3d 1158, 1170 (9th Cir. 2010); *see also United States v. Cluchette*, 465 F.2d 749, 754 (9th Cir. 1972) ("It is not our function to reweigh the evidence and pass on the credibility of the witnesses.").

Assuming the jury disbelieved petitioner's testimony and reviewing the record as a whole, the Court of Appeal concluded that "there was sufficient circumstantial evidence for the jury to infer Frando was aware of the presence and illegal character of the contraband he was transporting." Doc. No. 14-2 at 17. The Court of Appeal specifically identified the following evidence supporting the jury's finding that petitioner knowingly transported the cocaine: (1) petitioner's "suspicious, evasive behavior" in response to seeing the border patrol agents; (2) petitioner's false statements to the agents during his detention; (3) petitioner's admissions that he "knew there was something bad about those damn bags … I kind of knew"; (4) that petitioner was paid $800 by someone petitioner knew to be involved in transporting drugs; (5) petitioner's admission that events before and during the transaction made him "uncomfortable"; and (6) expert testimony that "unknowing drug couriers would not be trusted with such an extensive amount of narcotics." *Id.* at 18-20. The Court of Appeal noted that petitioner testified that he was unaware that the bags contained drugs and offered benign explanations for his behavior when stopped, but "the jury did not find his testimony credible." *Id.* at 20.

1  The Court concludes that the California Court of Appeals reasonably applied
2  *Jackson*. Accordingly, and for the foregoing reasons, the Court recommends the petition
3  be **DENIED** as to the second ground for relief.

### C. Ground Three: Admission of Opinion Evidence

As a third ground for habeas corpus relief, petitioner asserts that "the trial court erred in admitting [Detective Bedingfield's] expert testimony without a proper foundation." Pet. at 8. Petitioner explains that Detective Bedingfield testified at trial over his counsel's objection that a first-time courier would not have been tasked with transporting 33 kilograms of cocaine (the amount of drugs found in petitioner's car) because drug running organizations "usually try employees out" by giving them small amounts of drugs to transport "before trusting the courier with a large shipment." *Id.* at 8. The trial court overruled counsel's objection that this testimony lacked foundation and was speculative. *Id*. Petitioner contends that this "error" violated his "federal and state right to constitutional due process." *Id.*

Respondents counter that petitioner's claim that the trial court made an incorrect evidentiary ruling "present[s] only issues of state law" and "is not cognizable on federal habeas review." Doc. No. 13-1 at 25. Moreover, respondents argue, even if the state court's evidentiary ruling were subject to review by this Court, there is no "clearly established federal law" regarding whether the admission of "irrelevant or overtly prejudicial evidence" deprives a defendant of due process. *Id.* at 26. The Court of Appeal found that "there was sufficient foundation" for Detective Bedingfield's testimony "based on his experience, training and education," and that the trial court did not abuse its discretion by admitting it. Doc. No. 14-12 at 23-24.

"Federal habeas courts do not review questions of state evidentiary law." *Briceno v. Scribner*, 555 F.3d 1069, 1077 (9th Cir. 2009). Thus, to the extent petitioner's claim challenges the state court's application of state evidentiary law, respondents are correct that such a claim is not cognizable in federal habeas corpus. Doc. No. 13-1 at 26. Even if this Court "'belie[ved] that the trial judge incorrectly interpreted the California Evidence

Code in ruling' on the admissibility of evidence," it is not within the Court's power to vacate petitioner's conviction based on that belief. *Briceno*, 555 F.3d at 1077 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

To the extent petitioner's claim asserts a federal due process violation, the Court finds that petitioner has failed to show that federal habeas relief is warranted. Petitioner does not identify, and the Court has not found, any Supreme Court precedent indicating that the erroneous admission of evidence *per se* constitutes a due process violation sufficient to warrant issuance of a writ. Absent such a holding, this Court cannot conclude the California Court of Appeal's ruling was contrary to, or an unreasonable application of, clearly established federal law. *See Wright,* 552 U.S. at 126.

The erroneous admission of evidence may warrant habeas relief if – and only if – "it results in the denial of a fundamentally fair trial in violation of the right to due process." *Briceno*, 555 F.3d at 1077 (citing *Estelle*, 502 U.S. at 67-68). This "inquiry" necessarily "requires" the Court "to examine the alleged constitutional violation 'in light of the evidence as a whole' at a petitioner's trial." *Gimenez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016). Here, the Court of Appeal reasonably found that any error in the admission of the detective's opinion testimony was harmless, since there was ample other evidence – including petitioner's own statements – from which the jury could conclude that petitioner knowingly transported the cocaine. Doc. No. 14-12 at 27-28. Considering the totality of the evidence at trial, petitioner has not persuaded the Court that the admission of Detective Bedingfield's testimony "undermined the fundamental fairness of the entire trial,'" or that "but for" its admission, "'no reasonable factfinder' would have found him guilty." *Gimenez*, 821 F.3d at 1145 (citations omitted). The Court therefore finds petitioner has not established that the admission of Detective Bedingfield's testimony, even if erroneous, deprived him of a fundamentally fair trial.

For the foregoing reasons, the Court recommends the petition be **DENIED** as to the third ground for relief.

///

### D. Ground Four: Prosecutorial Misconduct

As a fourth ground for relief, petitioner asserts that he was "deprived of [his] constitutional right to a fair trial" due to "multiple instances of prosecutorial misconduct." Pet. at 9. Petitioner states that "during closing argument, the prosecutor made misstatements of the law, and misstated the facts or argued matters outside the evidence based on his own opinion," and that "the cumulative effect of this misconduct was to deprive [Petitioner] of a fair trial, in violation of [his] federal due process right[s]" under the Fifth, Sixth and Fourteenth Amendments.[6] *Id.*

Respondents argue that petitioner cannot state a claim for habeas relief, because he cannot show that the prosecutor's actions were so pervasive as to render petitioner's conviction a denial of due process. Doc. No. 13-1 at 28. As to the specific misconduct alleged, respondents state that the prosecutor made "fair" arguments and did not "misstate" or unfairly characterize the evidence during closing remarks. *Id.* at 29-30. Respondents further argue that even if some of the prosecutor's "isolated" remarks "went too far," any error was harmless considering the other evidence at trial and the curative instructions given by the trial court. *Id.* at 31.

"Review for prosecutorial misconduct claims on a writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Jones v. Ryan*, 691 F.3d 1093, 1102 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2831 (2013) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). To be entitled to relief on this basis, the

---

[6] Petitioner does not identify the offending "misstatements" in his Petition. *See* Pet. at 9. However, by reference to the Court of Appeal's opinion and the briefing in the state appellate courts, the Court discerns that the claim of prosecutorial misconduct is based on the following remarks by the prosecutor during closing argument: (1) three references to "reasonableness" or a "reasonable interpretation of the evidence," which petitioner argued to the Court of Appeal misstated the law and "trie[d] to shift the burden of proof to the defendant" (*see* Doc. No. 14-8 at 56; Doc. No. 14-12 at 32); (2) a statement that petitioner's friend Joel was "a regular drug trafficker," for which petitioner claimed the prosecutor was "making up facts" (*see* Doc. No. 14-8 at 55-56; Doc. No. 14-12 at 34) and (3) the prosecutor's statement, in response to the defense's argument that "experienced drug traffickers don't consent to a search of their car," that "it's done all the time," which petitioner also argued was a statement of facts not in evidence (*see* Doc. No. 14-8 at 54-55, Doc. No. 14-12 at 34).

"alleged misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citation omitted). Stated otherwise, the Court will grant habeas relief because of an "'[i]mproper comment'" by the prosecutor "'only if it appears that the comment may possibly have affected the verdict.'" *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002). Thus, a claim of prosecutorial misconduct is evaluated not as an isolated event but in the context of the trial as a whole. *Id.*

### 1. Alleged misstatement of law

Petitioner asserts that the prosecutor "misstate[d] the law" during closing argument by telling the jury that petitioner knew there were drugs in the suitcases he was transporting because:

> His only connection to Alex is through his friend Joel, the drug trafficker and … he's saying, I don't know what's in these bags. You know that's not true. You don't need hindsight. You just need to be reasonable. And that's your standard. Reasonableness.
> \*\*\*
> The reasonable interpretation of the evidence is that someone took a job moving drugs north. … There's one reasonable interpretation of the evidence.

Doc. No. 14-5 at 82-83, 86; *see also* Doc. No. 14-8 at 56. Petitioner argued to the Court of Appeal, and appears to argue here, that these statements misrepresented the prosecution's burden of proof, and prejudiced him. *Id.* at 58-59; *see also* Pet. at 9.

The Court disagrees, and finds that the state Court of Appeal reasonably concluded that "it was clear the prosecutor was discussing the 'reasonable interpretation of the evidence,' which was largely circumstantial." Doc. No. 14-12 at 33. The Court also observes that the jury received clear instructions at the end of the trial that the State was required to prove the elements of the crime with which petitioner was charged beyond a reasonable doubt. *See* Doc. No. 14-5 at 40, 41, 43, 44. The trial judge also instructed the jury that petitioner's knowledge could be proven by circumstantial evidence if the jury was persuaded that "the only reasonable conclusion supported by the circumstantial evidence is that the defendant had that required intent and mental state." *Id.* at 44; *see also id.* at 43, 44 (instructing jury to "reject unreasonable interpretations" of the evidence). The

prosecutor's remarks were consistent with these instructions to the jury. The Court is not persuaded that the prosecutor's remarks, viewed in the context of the entire trial, misled the jury as to the applicable burden of proof. *See U.S. v. Robinson*, 485 U.S. 25, 33 (1988) (noting that a "prosecutorial comment must be examined in context …"). The Court therefore cannot conclude that the remarks caused such pervasive unfairness that petitioner was deprived of his right to due process.

### 2. *Alleged statements of facts not in evidence*

Petitioner also complains that the prosecutor "misstated the facts or argued matters outside the evidence" during closing argument. Pet. at 9. Referring to petitioner's brief to the state appellate court, it appears that first such complained-of statement of "matters outside the evidence" was the prosecutor's statement, in support of a finding that petitioner knowingly transported the cocaine, that petitioner "[was] working for Alex who he only knows through his best friend, the drug trafficker … think about that for a second. His best friend is a regular drug trafficker." Doc. No. 14-5 at 82. Petitioner's counsel objected, and the trial court admonished the jury:

> Again, ladies and gentlemen, I mentioned to you before; the comments of the attorneys is not evidence. It's your job to determine what the facts are based solely on the evidence that's been admitted in this case.

*Id.* The prosecutor then continued with the closing argument. *Id.*

The Court finds that these statements by the prosecutor do not entitle petitioner to habeas corpus relief. In making this determination, the Court has considered "(1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against [petitioner]." *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005) (citation omitted).  The Court agrees with the Court of Appeal that the prosecutor's statement did not manipulate or misstate the evidence, but instead was a "fair comment" based on "reasonable inferences … or deductions" from the evidence at trial. Doc. No. 14-12 at 34. Following these remarks, the trial judge immediately reminded the jury – and instructed them throughout

the proceedings – that the comments of the attorneys were not evidence. *See* Doc. No. 14-4 at 13; Doc. No 14-5 at 41, 82. The Court "presume[s]" that the jurors "follow[ed] the trial court's instructions absent extraordinary situations." *Tak Sun Tan*, 413 F.3d at 1115. Furthermore, as discussed above, the evidence of petitioner's guilt, including his own testimony, was robust. For these reasons, the Court finds the prosecutor's characterization of petitioner's friend as a "regular drug trafficker" did not "infect[] the trial" with unfairness. *Jones*, 691 F.3d at 1102.

Petitioner also claims prosecutorial misconduct based on the prosecutor's statement, rebutting petitioner's claim that "experienced drug traffickers don't consent to a search of their car" that such a statement was "just not true" and that "it's done all the time" to "give the driver of the car the ability to say … I have nothing to hide." *See* Doc. No. 14-5 at 81-82. The trial court overruled petitioner's counsel's objection to these statements. *Id.*

The Court finds that the Court of Appeal reasonably concluded that this remark was improper but harmless. *See* Doc. No. 14-5 at 81-82. "While the government may not 'suggest that information not in evidence supports its case,' [citation], prosecutorial misconduct violates due process only if evidence is presented which 'taken as a whole' gives a jury a 'false impression.'" *Downs v. Hoyt*, 232 F.3d 1031, 1038 (9th Cir. 2000) (finding "no clear error" from prosecutor's improper but "passing" remarks during closing argument) (citations omitted). Considering that the prosecutor's statement was brief, the trial court's repeated instructions to the jury that the attorneys' statements were not evidence, and the weight of other evidence of petitioner's guilt, the Court cannot conclude that the prosecutor's statement that drug traffickers "consent all the time," *see* Doc. No. 14-5 at 81, gave the jury a false impression or affected the verdict. *See Darden*, 477 U.S. at 182 (finding habeas relief not warranted based on prosecutor's improper comments where "the weight of the evidence against petitioner was heavy" and the trial court "instructed the jurors several times that their decision was to be made on the basis of the evidence alone").

///

Based on the foregoing, the Court agrees with the state courts that there was no fundamental unfairness to petitioner – and therefore, no due process violation – due to the prosecutor's remarks during closing argument. Accordingly, the Court finds that petitioner is not entitled to habeas relief based on the alleged prosecutorial misconduct and recommends that the Petition be **DENIED** on the fourth ground for relief.[7]

## V. CONCLUSION and RECOMMENDATION

For the reasons stated below, the Court finds that petitioner has not shown that the state court's determination of any of his claims was decision was contrary to, or involved an unreasonable application of, clearly established federal law. Therefore, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: 1) approving and adopting this Report and Recommendation; and 2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS HEREBY ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **thirty (30) days** from the date this Report and Recommendation is filed. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 21, 2022

Hon. Karen S. Crawford
United States Magistrate Judge

---

[7] Because the Court finds on the merits of the argument that the alleged misconduct does not provide a basis for relief, it does not reach petitioner's "alternative" argument that "if an objection was required to preserve any of these instances of misconduct, defense counsel rendered ineffective assistance by failing to object." *See* Pet. at 9.